IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BYRON PATTON III, | |
| Plaintiff, | No. 20-cv-00076 |
| v. | Judge John F. Kness |
| JAMIE RHEE, in her official capacity as Commissioner of the Department of Aviation; ANDREW VELASQUEZ III, in his individual capacity; TAMARA MAHAL, in her individual capacity; and the CITY OF CHICAGO, as a municipal corporation and as an indemnitor, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Byron Patton brought this suit against his former employer, Defendant City of Chicago, and superiors, Defendants Jamie Rhee, Andrew Velasquez, and Tamara Mahal. Plaintiff alleges that Defendants discriminated against him on the basis of his race and age, and that, after he complained about one of his superiors and about his discriminatory treatment, Defendants retaliated against him in violation of state and federal law.

Defendants now seek dismissal of all of Plaintiff's official-capacity claims against Defendant Rhee; Plaintiff's race-discrimination claim under 42 U.S.C. § 1981 (Count II); and Plaintiff's state-law retaliation claim (brought under the Illinois Whistleblower Act) against the individual Defendants (Count VI). Defendants also

ask the Court to limit Plaintiff's retaliation claim under Title VII (Count VII) so that claim only extends to Plaintiff's termination.

For the reasons that follow, Defendants' motion is granted in part and denied in part. All official-capacity claims are dismissed against Defendant Rhee. Plaintiff's § 1981 claim (Count II) is dismissed without prejudice, and Plaintiff's IWA claim (Count VI) is dismissed against the individual Defendants with prejudice. Defendants' motion to dismiss is otherwise denied.

I.  **BACKGROUND**

Plaintiff Byron Patton, a 56-year-old Black man, worked for the City of Chicago Department of Aviation (CDA) from November 16, 2010 until his termination on November 22, 2019. (Dkt. 15 ¶¶ 18, 19.) During at least part of that period, Defendant Jamie Rhee was CDA's Commissioner, and Defendant Andrew Velasquez was the agency's Managing Deputy Commissioner. (*Id.* ¶¶ 5, 6.)

On November 26, 2018, Defendants Rhee and Velasquez appointed Defendant Tamara Mahal as Airport Emergency Manager. (*Id.* ¶¶ 7, 24.) In that capacity, Defendant Mahal was Plaintiff's "immediate supervisor and/or superior." (*Id.* ¶ 7.) According to Plaintiff, Defendant Mahal, a White female under the age of 40, had less than three years of experience with the CDA, and had no experience in safety or management. (*Id.* ¶ 22.) Defendant did not post the job before hiring Defendant Mahal, which, Plaintiff alleges, violated Defendant City of Chicago's policy. (*Id.* ¶ 53.)

Plaintiff complained about Defendant Mahal's poor attendance on numerous occasions. (*Id.* ¶ 29.) From December 2018 through June 2019, for example, Plaintiff

2

reported Defendant Mahal's alleged time and attendance violations to the City's Office of Inspector General (OIG). (*Id.* ¶¶ 29, 105, 110.) From April 2019 through May 2019, Plaintiff reported those same violations to representatives in Human Resources (HR) and to Defendant Velasquez. (*Id.* ¶¶ 110, 113, 129.)

In May 2019, Plaintiff filed charges of race and age discrimination, as well as retaliatory treatment, with the Illinois Department of Human Rights (IDHR) and with the Equal Employment Opportunity Commission (EEOC). (*Id.* ¶¶ 8-9.) Plaintiff alleges that Defendant Mahal then began to harass Plaintiff in a variety of ways— including via email and by excluding him from meetings. (*Id.* ¶¶ 115, 132.) Defendants Mahal and Velasquez also instructed Plaintiff to return his City-issued vehicle, forced him to move to a smaller office, appointed another employee with "less seniority and experience" as Plaintiff's supervisor, and "reported false allegations of threats regarding Plaintiff to the Chicago Police Department." (*Id.* ¶¶ 116-118, 133-135.) On November 22, 2019, Defendants terminated Plaintiff. (*Id.* ¶ 41.)

On January 5, 2020, Plaintiff filed this suit; an amended complaint soon followed. (Dkts. 1, 15.) Plaintiff alleges that Defendants intentionally discriminated against him on account of his race and age, in violation of Title VII (Count I), § 1981 (Count II), the Illinois Human Rights Act (IHRA) (Counts III and V), and the Age Discrimination and Employment Act (ADEA) (Count IV).[1] Plaintiff also brought

---

[1] Plaintiff agreed to withdraw his § 1981 claim against Defendant Rhee. (Dkt. 31 at 10.) Plaintiff continues to assert that claim against Defendants City of Chicago and Velasquez. (*Id.*) Plaintiff also agreed to withdraw Counts I and IV as to Defendants Rhee and Velasquez. (*Id.* at 7-8.) Plaintiff continues to assert those claims against Defendant City of Chicago. (*Id.* at 8.)

claims for violations of the Illinois Whistleblower Act (IWA) (Count VI) and Title VII (Count VII) for Defendants' allegedly retaliatory actions in response to Plaintiff's complaints about Defendant Mahal and those filed with the IDHR and EEOC.[2]

On March 16, 2020, Defendants moved to dismiss Counts I–VI, as well as portions of Count VII. (Dkt. 24.) Among other things, Defendants argued that Plaintiff's race, age, and retaliation claims were untimely, and that Defendants are immune from certain claims under the Illinois Tort Immunity Act (TIA). (*Id.* at 3-4, 10-14.) In their Reply brief, Defendants withdrew their untimeliness arguments, but they continue to insist that the Court should "dismiss Count VI as to the Individual Defendants, dismiss Rhee as a defendant in her official capacity, find Defendants immune from liability under the IWA, dismiss the Section 1983 claim with prejudice, and limit the basis of Count VII to the only actionable materially adverse action— Plaintiff's termination." (Dkt. 36 at 3.)[3]

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

---

[2] Plaintiff agreed to withdraw Count VII as to Defendants Rhee, Velasquez, and Mahal. (Dkt. 31 at 7-8.) Plaintiff still asserts Count VII against Defendant City of Chicago. (*Id.*)

[3] Because Defendants withdrew their untimeliness arguments, this opinion does not address those arguments.

4

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678-79.

### III. DISCUSSION

#### A. Claims Against Defendant Rhee in Her Official Capacity

Defendants contend that Plaintiff's claims against Rhee in her official capacity as Commissioner of the CDA are redundant. (Dkt. 24 at 8; Dkt. 36 at 3-4.) Plaintiff names Rhee as a defendant in "her official capacity" only. (Dkt. 15 ¶ 5.) He does not allege that she was personally involved in any of the conduct that forms the basis of his suit. Nonetheless, Plaintiff argues that "as Commissioner of the City of Chicago Department of Aviation, [Defendant Rhee] either knew or should have known of the actions by the City Defendants and failed to act." (Dkt. 31 at 10.)

Numerous binding precedents explain that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see Bridges v. Dart*, 950 F.3d 476, 478 n.1 (7th Cir. 2020) (treating suit against "Sheriff in his official capacity as suit against the

County"); *McCann v. Ogle Cnty.*, 909 F.3d 881, 888 (7th Cir. 2018) (treating claims against sheriff and police captain "in their official capacities" as being against the county). Plaintiff's claim against Defendant Rhee "in her official capacity" (Dkt. 15 ¶ 5) is thus a claim against her employer, Defendant City of Chicago.

Plaintiff's contentions that Defendant Rhee "knew or should have known of the actions by the City Defendants," and that she "ha[d] an obligation to be aware of such conduct and appropriately address [it]" (Dkt. 31 at 10), do not change this calculus. If Defendant Rhee's conduct was "in her official capacity," any claim as to what she knew or should have known would extend to the City. Plaintiff offers no other support for the argument that his suit against Defendant Rhee in her official capacity should proceed in tandem with the suit against Defendant City of Chicago. Accordingly, all claims brought against Defendant Rhee in her official capacity are dismissed.

### B. Section 1981 *Monell* Claim (Count II)

Section 1981 "prohibits racial discrimination in the making and enforcement of contracts." *Tanner v. City of Chicago*, No. 20-cv-1082, 2021 WL 197422, at *5 (N.D. Ill. Jan. 20, 2021). In Count II, which the Court construes as having been brought under *Monell v. City of N.Y. Dep't of Social Servs.*, 436 U.S. 658 (1978), Plaintiff alleges that Defendants City of Chicago and Velasquez[4] discriminated against him on the basis of race by appointing Defendant Mahal to a position for which Plaintiff was more qualified. (Dkt. 15 ¶¶ 56-67.)

---

[4] In his Response brief, Plaintiff "withdraw[s] Defendant Rhee as a Defendant to Count II. . . ." (Dkt. 31 at 10.)

6

Both the Supreme Court and Seventh Circuit have explained that there is no right of action against state actors under § 1981. Rather, "Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violation of the rights declared in § 1981." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989); *see Campbell v. Forest Pres. Dist. of Cook Cnty.*, 752 F.3d 665, 667 (7th Cir. 2014) ("§ 1981 itself provides a remedy for violations committed by private actors, but an injured party must resort to § 1983 to obtain relief for violations committed by state actors."). In their motion, Defendants argue that Count II should be dismissed because "Plaintiff makes no mention of Section 1983 or otherwise indicate[s] he is seeking to proceed under any statute other than Section 1981." (Dkt. 24 at 9.)

Plaintiffs "do not need to plead legal theories, such as section numbers," and other courts in this District have construed claims pleaded under § 1981 "as arising under § 1983." *Edmond v. City of Chicago*, No. 17-cv-04858, 2018 WL 5994929, at *6 (N.D. Ill. Nov. 15, 2018). Although Plaintiff does not cite 42 U.S.C. § 1983 in his complaint, the Court will construe his § 1981 claim (Count II) as having been brought under § 1983.

More problematic, however, is the nature of Plaintiff's claim in Count II, because the allegations in the complaint do not support claims against either Defendant City of Chicago or Defendant Velasquez. Under *Monell*, to bring a claim against a state entity, a plaintiff must allege "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so

7

permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009) (citing *Monell*, 436 U.S. at 690).

Against Defendant City of Chicago, Plaintiff alleges exactly the opposite of what would be required to state a valid *Monell* claim. According to Plaintiff, the conduct giving rise to the alleged race discrimination was "[i]n *violation of*"—not in compliance with—"Defendant City of Chicago policy." (Dkt. 15 ¶ 65 (emphasis added).) Plaintiff suggests that compliance with the City's policy would have protected his constitutional right; but if Plaintiff is correct, that fact would undermine the *Monell* claim—which depends upon conduct that follows an express or implied municipal policy. *Waters*, 580 F.3d at 581. Accepting as true the allegations of Plaintiff's complaint, *Iqbal*, 556 U.S. at 678, which it must, the Court finds that Plaintiff has failed plausibly to allege the existence of an "express policy that causes a constitutional deprivation." *Waters*, 580 F.3d at 581. Accordingly, Plaintiff's *Monell* claim against Defendant City of Chicago fails.

As for Defendant Velasquez, Plaintiff does not allege that Velasquez was "a person with final policymaking authority." *Waters*, 580 F.3d at 581; *see Aku v. Chi. Bd. of Educ.*, 290 F. Supp. 3d 852, 863 (N.D. Ill. 2017). To the contrary, he alleges that "[t]he decision to appoint Defendant Mahal was that of Defendants Rhee and Velasquez." (Dkt. 15 ¶ 63.) But Plaintiff "withdr[e]w Defendant Rhee as a Defendant to Count II" (Dkt. 31 at 10), and because Defendant Rhee was Defendant Velasquez's

8

superior (*see* Dkt. 15 ¶¶ 5-6), Plaintiff cannot plausibly claim that Defendant Velasquez is "a person with final policymaking authority," *Waters*, 580 F.3d at 581; *see also Argyropoulos v. City of Alton*, 539 F.3d 724, 740 (7th Cir. 2008) ("The authority, under state or local law, to *set* policy—*i.e.*, to adopt rules for the conduct of government—distinguishes a final policymaker, whose decisions may subject a municipality to § 1983 liability, from an official who merely possesses authority to *implement* pre-existing rules." (cleaned up)). Plaintiff thus has failed to state a plausible *Monell* claim against Defendant Velasquez.

In sum, even construing Plaintiff's § 1981 claim as having been properly brought under § 1983, the complaint does not plausibly allege a race-discrimination claim against Defendants City of Chicago or Velasquez. Accordingly, Count II is dismissed without prejudice.

    **C.**    **Illinois Whistleblower Act (Count VI)**

The IWA prohibits an employer from retaliating against an employee for disclosing information to a government or law enforcement agency where the employee has reasonable cause to believe the information discloses a violation of law. 740 ILCS 174/10. The purpose of the IWA is "to protect employees from adverse employment actions in retaliation for reporting or refusing to engage in unlawful conduct by their employers." *Young v. Alden Gardens of Waterford, LLC*, 30 N.E.3d 631, 654 (Ill. App. Ct. 2015).

### 1. *Individual Defendants*

Defendants argue that the Court should dismiss Plaintiff's IWA claims against the individual defendants because the IWA only provides for claims by an "employee" against an "employer," not claims against the employer's agents. (Dkt. 24 at 5 (citing 740 ILCS 174/1 *et seq.*).) Under the IWA, an "employer" is

> an individual, sole proprietorship, partnership, firm, corporation, association, [or] any other entity that has one or more employees in this State, including a political subdivision of the State; [and] a unit of local government . . . and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees.

740 ILCS 174/5. Although ostensibly extending liability to "any person acting within the scope of his or her authority," other courts have held that the IWA does not impose liability on individual employees. *See, e.g.*, *Cunliffe v. Wright*, 51 F. Supp. 3d. 721, 740 (N.D. Ill. 2014); *Parker v. Ill. Human Rights Comm'n*, No. 12 C 8275, 2013 WL 5799125, at *9 (N.D. Ill. Oct. 25, 2013); *Martorana v. Vill. of Elmwood Park*, No. 12-cv-6051, 2013 WL 1686869, at *4 (N.D. Ill. Apr. 18, 2013).

This limitation makes sense, especially in the context of this case. The section of the IWA at issue here (740 ILCS 174/5) was based on similar language in federal antidiscrimination statutes such as the Americans with Disabilities Act (ADA) and Title VII, *see Parker*, 2013 WL 5799125, at *9, and the definitions of "employer" in those statutes "is simply a statutory expression of traditional *respondeat superior* liability and imposes no individual liability on agents." *Williams v. Banning*, 72 F.3d 552, 553 (7th Cir. 1995) (citation omitted). The "any person" language upon which Plaintiff relies merely "express[es] that the agents' acts are attributable to the

10

employer." *Parker*, 2013 WL 5799125, at *9. As a matter of law, Plaintiff thus cannot state a claim against the individual defendants under the IWA. Accordingly, Plaintiff's IWA claims against the individual defendants are dismissed. Because any attempt to amend this claim would be futile in view of the foregoing analysis, the dismissal of this claim is with prejudice. *See Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) ("District courts have broad discretion to deny leave to amend . . . where the amendment would be futile.").

   2. *Defendant City of Chicago*

Defendants also argue that the Court should dismiss Plaintiff's IWA claim against Defendant City of Chicago because "Defendants are immune under the Illinois Tort Immunity Act [TIA]." (Dkt. 24 at 10.) Under the TIA, "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201.

But the Seventh Circuit has construed such statutory immunity arguments as "affirmative defenses." *Wilson v. City of Chicago*, 758 F.3d 875, 880 (7th Cir. 2014) (describing the TIA as an "affirmative defense"); *see Smith v. City of Chicago*, 143 F. Supp. 3d 741, 759 (N.D. Ill. 2015) ("the Tort Immunity Act provides affirmative defenses"). And the mere presence "of a potential affirmative defense does not render the claim for relief invalid." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). On the contrary, "a plaintiff may state a claim even though

11

there is a defense to that claim." *Id.* Defendants' arguments under the TIA are thus not proper at this stage of litigation.[5] Defendants' motion to dismiss Plaintiff's IWA claim against Defendant City of Chicago is therefore denied.

### D. Title VII (Count VII)

In Count VII, Plaintiff brings a claim for retaliation under Title VII. To successfully state a retaliation claim, a plaintiff must allege that he (1) "engaged in statutorily protected activity" and (2) "suffered an adverse action as a result of that activity." *Alamo v. Bliss*, 864 F.3d 541, 555 (7th Cir. 2017) (cleaned up). In their motion to dismiss, Defendants argue that, to the extent Plaintiff's Title VII claim is based on conduct *other than* his termination, Plaintiff fails to allege that Defendants' conduct can be considered an adverse employment action for purposes of Title VII. (Dkt. 24 at 14.)

Defendants' argument about the scope of the Title VII retaliation claim is premature. In the retaliation context, an adverse employment action is one "that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (quoting *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007)). Such a determination is "normally a question of fact and should not be resolved on a motion to dismiss." *Seung-Whan Choi v. Bd. of Trs. of Univ. of*

---

[5] Defendants cite to *Consolino v. Dart* (Dkt. 24 at 13-14), in which the court dismissed several claims as barred by the TIA. No. 17-cv-09011, 2019 WL 4450498, at *9 (N.D. Ill. Sept. 17, 2019). But it is unclear how *Consolino*—which, as Plaintiff notes, arose in a different context—could suggest a different outcome here in view of the Seventh Circuit's binding treatment of the TIA and affirmative defenses generally.

12

*Ill.*, No. 16 C 11627, 2017 WL 3278823, at *6 (N.D. Ill. Aug. 2, 2017) (collecting cases); *see also Gross v. City of Chicago*, No. 05-cv-547, 2005 WL 1866041, at *3 (N.D. Ill. June 13, 2005) (determining whether allegations constitute an adverse employment action is a question of fact "well beyond" the scope of a motion to dismiss). Because Defendants' arguments about the scope of Plaintiff's Title VII claim are better suited for summary judgment, Defendants' motion to dismiss parts of that claim is denied.

## IV. CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. All claims against Defendant Rhee in her official capacity are dismissed. Count II (§ 1981 *Monell*) is dismissed without prejudice, and Count VI (IWA) is dismissed against the individual defendants with prejudice. Defendants' motion to dismiss Count VI against Defendant City of Chicago is denied. Finally, Defendants' motion to dismiss part of Count VII is denied.

If Plaintiff believes he can remedy the deficiencies identified in this order (other than those in Count VI, to the extent that count is dismissed with prejudice against the individual defendants), he may file an amended complaint on or before April 11, 2022. If no amended pleading is filed by that date, the dismissals outlined in this order will automatically convert to dismissals with prejudice.

SO ORDERED in No. 20-cv-00076.

Date: March 23, 2022

_____
JOHN F. KNESS
United States District Judge