## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BYRON PATTON III,

                Plaintiff,

        v.

JAMIE RHEE, in her official capacity
as Commissioner of the Department of
Aviation; ANDREW VELASQUEZ III,
in his individual capacity; TAMARA
MAHAL, in her individual capacity;
and the CITY OF CHICAGO, as a
municipal corporation and as an
indemnitor,

                Defendants.

No. 20-cv-00076

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion for summary judgment of Defendants Jamie Rhee, Andrew Velasquez, and the City of Chicago. (Dkt. 99.) Plaintiff L. Byron Patton, a former Aviation Safety Manager with the City's Department of Aviation, brings several claims that his former employer discriminated against him based on his race and age when it selected Tamara Mahal to lead the City of Chicago Department of Aviation's newly-created Safety and Emergency Preparedness Section. Plaintiff further asserts that his employer fired him as a result of having engaged in statutorily protected activity, including by filing official complaints of discrimination and reporting alleged time and attendance abuse by Mahal. Plaintiff's

claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 *et seq.* ("ADEA"); the Illinois Human Rights Act, 775 ILCS 5/1 *et seq.* ("IHRA"); and the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.* ("IWA"). For the reasons stated below, Defendant's motion is granted.

## I.    BACKGROUND

The City of Chicago ("Defendant"), a municipal corporation, administers its own Department of Aviation (the "CDA"). (Dkt. 112 ¶ 2.) At the time this lawsuit was filed, Jamie Rhee had served as Commissioner of the CDA since July 1, 2018 (*Id.* ¶ 3.) Andrew Velasquez most recently worked for the CDA beginning June 19, 2017, previously serving as the Managing Deputy Commissioner when he began working as the head of the CDA's Safety & Security Division. (*Id.* ¶ 4.) Plaintiff, an African American man who was over 50 years old at the time this lawsuit was filed, began working for the CDA as an Aviation Safety Director on November 16, 2010, a position he held until his employment with the CDA was terminated in November 2019. (*Id.* ¶ 1.) Throughout his career, Plaintiff's work involved OSHA standards and developing safety policies and programs within the CDA's Safety Section. (*Id.* ¶ 7.) In addition, Plaintiff's resume stated that, as Aviation Safety Director, he developed and administered "procedures to be followed in accident cases and . . . during emergencies" among other areas of responsibility. (Dkt. 114-2.)

As of February 1, 2017, the Safety Section within the CDA was separate from the CDA's Emergency Preparedness & Management Section ("Emergency

2

Management Section") and the Security Section. (Dkt. 112 ¶ 11.) In November 2016, the City posted a Job Announcement for the position of Manager of Emergency Management Services with the CDA. (*Id.* ¶ 12.) Plaintiff did not apply for the position. (*Id.*) On February 28, 2017, Tamara Mahal ("Mahal") was appointed to the position of Manager of Emergency Management Services, but the Safety Section remained as a separate function at the time of her appointment. (*Id.* ¶ 13.)

After Rhee assumed leadership of the CDA as Commissioner, she implemented a reorganization of divisions and responsibilities between the airports in Chicago, including consolidating functions and proposed changes across all sections of the CDA. (*Id.* ¶ 19.) In November 2018, Plaintiff's supervisor was moved elsewhere within the CDA, leaving an untitled opening at the head of the Safety Section. (*Id.* ¶ 20.) As a result, and in the light of a directive from Rhee to leverage synergies and implement efficiencies, Velasquez recommended that the CDA bring its Safety Section under its Emergency Management Section. Velasquez also recommended that Mahal lead both sections based on her past performance and experience. (Dkt. 112 ¶ 21.)

At the time of that reorganization, Mahal remained as the head of Emergency Management, a title two grades higher than Plaintiff's. (*Id.* ¶¶ 21, 23.) Rhee accepted Velasquez's recommendation, and Mahal assumed responsibility over the Safety Section as well as the Emergency Management Section in November 2018. (*Id.* ¶¶ 23, 35.) Although Defendant disputes whether Mahal's assumption of additional responsibilities constituted a promotion, Plaintiff maintains that Mahal assumed a

new role titled Director of Safety and Emergency Management and that Plaintiff was passed over for the role. (*See* Dkt. 111 at 1.)

After Mahal assumed responsibility over the Safety Section, Plaintiff showed signs of discontent under her leadership. Plaintiff felt micromanaged by Mahal and took offense when Mahal insisted that he comply with her directives as his "boss." (Dkt. 112 ¶ 38.) In December 2018, Plaintiff, without authorization, began accessing CDA timekeeping records entered by Mahal. (*Id.* ¶¶ 43, 45.) Plaintiff then filed a report with the City of Chicago Office of the Inspector General ("OIG") stating that he suspected Mahal was "stealing time" by improperly editing records of when she arrived and left from work. (*Id.* ¶ 43.) Plaintiff also complained about Mahal's timekeeping practices to Velasquez in April 2019. Plaintiff's allegations against Mahal were reviewed by Defendant's Human Resources ("HR") Department. (Dkt. 112 ¶ 44.) No evidence in this case, however, speaks to whether Defendant or any other overseeing entity made a finding of misconduct by Mahal.

On May 22, 2019, Plaintiff filed a charge alleging race and age discrimination with the Illinois Department of Human Rights ("IDHR"); the charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 41.) Plaintiff complained that, because of his race and his age, he was overlooked for a "promotion" to the role Mahal received and that he was subject to harassment in retaliation for reporting alleged time and attendance violations committed by Mahal. (*Id.*) Communication between Plaintiff and Mahal broke down sometime in the summer of 2019, and Plaintiff stopped speaking to her. (*Id.* ¶ 40.)

In the interim between the May 2019 EEOC filing and the drop-off in communication with Mahal, Plaintiff's relationship with Mahal continued to deteriorate. Employees reported that they had heard Plaintiff make threatening comments regarding Mahal. One employee reported to Velasquez that Plaintiff had stated that if someone spoke to him on the street the way Mahal did at work, he would put a "boot up their ass" and that "anyone who [would speak] to him [as Mahal did] would need resuscitation after he was done with them." (Dkt. 112 ¶ 47.) Mahal reported in a November 2019 email to HR that Plaintiff had been tracking her whereabouts. Mahal also complained that Plaintiff had sent her an email where Plaintiff told Mahal he had been watching her during certain work meetings to see how often she looked at her phone instead of focusing on the meeting. (Dkt. 100-10.)

Velasquez eventually determined that the Chicago Police Department ("CPD") should conduct a threat assessment concerning the matter. Mahal stated in an interview with CPD that she was frightened of Plaintiff and that she found his conduct threatening and intimidating. (*Id.* ¶ 52.) Plaintiff, for his part, alleged that he had been marginalized by Mahal and other co-workers, that approval of his vacation requests had been delayed, that he had been made to move offices, and that he now had to share a company vehicle for purposes of traveling around the premises at work instead of retaining his own. (Dkt. 51 ¶¶ 115–17.)

In November 2019, Velasquez submitted a memorandum to Rhee summarizing a pattern of Plaintiff's conduct, which Velasquez characterized as "threatening and harassing." (Dkt. 100-10 at 5.) Velasquez requested Plaintiff's termination, stating to

Rhee, "Mr. Patton has engaged in behavior unbecoming of a member of CDA's managerial staff within the Safety and Security Division." (*Id.* at 2.) Rhee granted Velasquez's request and submitted a letter to Plaintiff dated November 22, 2019, informing Plaintiff of his termination and explaining the reasoning for the termination. (*Id.* at 1.)

On December 10, 2019, Plaintiff filed a second charge with the EEOC alleging that he was subject to harassment and termination in retaliation for reporting alleged time and attendance violations by Mahal and for filing a previous charge of discrimination. (Dkt. 112 ¶ 58.) After receiving a Right to Sue letter from the EEOC, Plaintiff filed this lawsuit against Defendant, Mahal, Velasquez, and Rhee. (Dkt. 1.)

After filing a Third Amended Complaint (Dkt. 51) (that complaint followed motions directed at Plaintiff's earlier pleadings), Plaintiff voluntarily withdrew Counts III and V against the individual defendants named in the amended complaint (which had omitted Mahal). Although Count II of the Third Amended Complaint named Rhee and Velasquez as defendants, the Court dismissed Count II in a previous order. (Dkt. 69.) The City of Chicago therefore remains as the sole defendant in this case across all remaining counts under Title VII, the ADEA, the IHRA, and the IWA. Defendant now moves for summary judgment on each of Plaintiff's remaining claims.

## II.    STANDARD OF REVIEW

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

6

entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted). All facts, and any inferences to be drawn from them, are viewed in the light most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. DISCUSSION

Under Title VII, an employer is prohibited from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA

"protects workers 40 years of age and older from age-based employment discrimination." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018).

A plaintiff can prove a Title VII, ADEA, or IHRA[1] discrimination claim either through the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) or in an otherwise "holistic fashion" under *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Under either approach, the Court must look at the record as a whole, and the "critical question is whether the plaintiff has produced enough evidence to permit a reasonable factfinder to conclude that the plaintiff's race, [age,] or other proscribed factor caused the adverse employment action. *Chatman v. Board of Education of City of Chicago*, 5 F.4th 738, 746 (7th Cir. 2021); *Baraona v. Vill. of Niles*, 720 F. Supp. 3d 601, 614 (N.D. Ill. 2024).

Plaintiff states that Defendant unlawfully discriminated against him in violation of Title VII and the IHRA when Defendant failed to promote him due to his race, promoting Tamara Mahal, a white colleague, in his stead. Plaintiff asserts in the alternative that Defendant promoted Mahal over him because of his age in violation of the ADEA and IHRA. Plaintiff further argues that Defendant unlawfully retaliated against him under Title VII and the IWA after he conducted an investigation, on his own initiative and without his employer's authorization, into Mahal's timekeeping and attendance practices and then filed complaints of discrimination.

---

[1] Discrimination claims under the IHRA should be analyzed in the same way as federal claims. *Teruggi v. CIT Group/Capital Finance, Inc.*, 709 F.3d 654, 659 (7th Cir. 2013).

Plaintiff's claims of discrimination are addressed below both under the *McDonnell Douglas* framework, which remains a helpful method of organizing evidence, and in a holistic fashion. Similarly, the evidence regarding retaliation is assessed holistically. *See Ames v. Ohio Department of Youth Services*, 605 U.S. 303, 308 n.2 (2025) ("*McDonnell Douglas* merely aims to provide a sensible, orderly way to evaluate the evidence that bears on the critical question of discrimination.") (internal quotations omitted). Because Plaintiff has not produced evidence that would permit a reasonable factfinder to find that Defendant discriminated against Plaintiff based on his race or his age, Defendant's motion for summary judgment on Plaintiff's discrimination claims must be granted. Likewise, as Plaintiff does not present any evidence to establish a causal link between his termination and either his discrimination complaints or his report concerning Mahal's timekeeping practices, summary judgment must be awarded to Defendant on Plaintiff's retaliation claims.

### A.    Discriminatory Failure to Promote

To evaluate Plaintiff's Title VII, ADEA, and IHRA claims stemming from Defendant's failure to promote him, the Court looks at whether the evidence would permit a reasonable factfinder to conclude that racial discrimination caused the adverse employment action—here, the promotion decision. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also Luckett v. Human Rights Comm'n*, 210 Ill. App. 3d 169, 179 (Ill. App. 1989) ("When analyzing claims of discrimination under the [IHRA], Illinois courts have looked to the standards applicable to analogous federal claims."). Under the *McDonnell-Douglas* framework, a plaintiff must make

9

out a *prima facie* case in support of his claim by producing "evidence showing that: (1) [ ]he was a member of a protected class; (2) [ ]he was qualified for the position sought; (3) [ ]he was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position," *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016), or who "had similar or lesser qualifications[.]" *Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 444 (7th Cir. 2014). If the plaintiff succeeds in making the necessary showing, the burden shifts to the employer, who must articulate "a legitimate nondiscriminatory reason for the employment action," at which point the burden shifts back to the plaintiff to submit "evidence that the employer's stated reason is a pretext." *Riley*, 829 F.3d at 891–92.

### 1. Race

Construing all inferences in Plaintiff's favor prevents the Court from finding that Plaintiff has failed to establish a *prima facie* case for racial discrimination. Defendant argues that Plaintiff was unqualified for the Director of Safety and Emergency Management role because his experience was limited to the "narrow sub-field of safety." (Dkt. 101 at 12.) In response, Plaintiff emphasizes that he "completed National Incident Management Training (NIMS) and Incident Command System Training for FEMA in his capacity for other positions prior to his employment with the City," and "those organizations were larger than Defendant's Department of Aviation." (Dkt. 111 at 6; Dkt. 114-2.)[2] Recognizing that the Director of Safety and

---

[2] Defendant highlights that Plaintiff's Response to Defendant's statement of facts (Dkt. 112) does not comply with Local Rule 56.1 because it is argumentative and contains additional facts. Indeed, district courts may strictly enforce compliance with Local Rule 56.1. *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011); *Ammons v. Aramark Unif. Servs., Inc.*,

Emergency Management role required experience both in safety planning and emergency management, Plaintiff argues that he "had nine years of experience" as an "Aviation Department as Aviation Safety Director[.]" (*Id*.) Plaintiff states that he had "emergency management experience" from this role because he had been "charged with development and administration of procedures to be followed in accident cases and for cooperation/coordination among control tower, fire, police, tenant and Chicago Department of Aviation personnel during emergencies." (*Id*.)

Despite Defendant's insistence that it sought "a leader with a competency and experience focus with emergency management, rather than safety," qualifications Plaintiff allegedly did not possess (Dkt. 121 at 8–9), a reasonable jury could find that Plaintiff was qualified for the role given his years of experience as a safety director and his role developing emergency procedures. Courts, after all, are not "super-personnel departments" and are ill-equipped to make business-related assessments of an employee's qualifications. *Brooks v. Avancez*, 39 F.th 424, 436 (7th Cir. 2022). Plaintiff has procured some evidence showing that he had experience in emergency management, raising a factual question as to whether he was qualified for the

---

368 F.3d 809, 817 (7th Cir. 2004). In addition, Defendant argues that Plaintiff improperly cites to the raw record throughout his response brief and fails to cite to the Local Rule 56.1 statements of fact. (Dkt. 121 at 4–6.) Courts within this district have often required parties to cite to statements of fact for purposes of summary judgment. *See Mervyn v. Nelson Westerberg, Inc.*, 142 F. Supp. 3d 663, 664-67 (N.D. Ill. 2015) (collecting cases). In this instance, however, the Court will consider a fact to be "properly disputed or provided" when the Court has "located support for [Plaintiff's] position in its analysis of the record that the Court conducted in resolving the motion for summary judgment or when properly provided in [Plaintiff's] statement of additional facts." *Morris v. Borgwarner*, 2025 WL 2098763, at *2 (N.D. Ill. July 25, 2025). This approach is owing to the "preference," where possible, to "decide disputes on the merits." *Id*. (citing *Sullers v. Int'l Union Elevator Constructors, Loc. 2*, 141 F.4th 890, 897 (7th Cir. 2025)).

Director of Safety and Emergency Management role. Awarding summary judgment specifically on the grounds that Plaintiff has failed to show that he was qualified for the position would thus be inappropriate.

Defendant also argues that Plaintiff's "failure to promote" claim must fail because Mahal was not promoted but instead reassigned additional responsibilities related to Defendant's safety function as the Director of Safety and Emergency Management. Because Mahal was not promoted, Defendant argues, Plaintiff cannot show that someone from outside the protected class was promoted over him or that he was rejected for the position. Indeed, Defendant states, and Plaintiff does not dispute, that "Mahal's position at Safety and Emergency Preparedness, despite her additional responsibilities, was not a new position or promotion from her previous role." (Dkt. 112 ¶ 23.)

But in response, Plaintiff points to deposition testimony from Mahal showing that her responsibilities "changed" in the new role. (Dkt. 111 at 5; Dkt. 114-4 at 20:1–21:20.) Mahal also stated in her deposition that assuming the Director of Safety and Emergency Management involved "taking [on] new responsibilities." (Dkt. 114-4 at 13:4–12.) Although Mahal did not receive an increase in pay upon assuming these new responsibilities, she stated that she eventually received a new title and a salary increase to reflect her increased responsibility level. (*Id.* at 17:16–19:11.) Whether Mahal's reassignment constituted a promotion therefore appears to present another factual question, which, for purposes of summary judgment, must be construed in Plaintiff's favor.

To challenge the third element of Plaintiff's *prima facie* case, Defendant argues that Mahal was more qualified than Plaintiff. Defendant cites evidence to show that Mahal possessed more emergency management experience, that she held a master's degree in emergency management, and that she also held a higher title and pay grade than Plaintiff. (Dkt. 101 at 12.) Plaintiff, in turn, cites deposition testimony from Mahal stating that she did not have safety experience "[i]n terms of the OSHA compliance and the field of safety" at the time that she assumed the role of Director of Safety and Emergency Management. (Dkt. 111 at 6; Dkt. 114-4 at 8:20–23.) Mahal also agreed in her deposition that Plaintiff "had more experience" in "OSHA compliance and airport safety" and in "field safety." (Dkt. 114-4 at 14:12–24.)

Whether Mahal was more qualified than Plaintiff thus appears to turn on whether or to what extent Plaintiff's greater safety experience mattered for the role in question. Because Defendant states, and Plaintiff does not dispute, that "Velasquez believed Mahal possessed core competencies in the safety field" in deciding to that she should assume leadership of the Safety and Emergency and Management function (Dkt. 112 ¶ 26), safety experience was evidently relevant to the role in question. Accordingly, drawing all inferences in Plaintiff's favor, there appears to be a factual dispute as to whether Defendant was more qualified for the Director of Safety and Emergency Management role than Plaintiff.

Even if Plaintiff can establish a *prima facie* case of racial discrimination, however, summary judgment is appropriate because no evidence suggests that Defendant's proffered nondiscriminatory reason for promoting Mahal was pretextual.

An employer's "genuine belief" that another candidate's "vision for the organization or skillset makes them better suited for the job is a legitimate, nondiscriminatory hiring rationale." *Cunningham v. Austin*, 125 F.4th 783, 789 (7th Cir. 2025). Defendant points out that Velazquez, the employee responsible for designating Mahal as Director of Safety and Emergency Management, believed that she had "demonstrated initiative, drive, and leadership capabilities during her employment with the CDA." (Dkt. 112 ¶ 26.) Defendant further states that "Velasquez was particularly impressed with Mahal's performance in helping to build the Emergency Management Section and considered that she had specific experience in migrating Safety competencies into the Emergency Management program." (*Id*.) Mahal therefore "possessed core competencies in the safety field" and "had demonstrated the competency and experience necessary to assume leadership of Safety and Emergency Preparedness." (*Id*.) In short, Defendant proffers that it promoted Mahal because her skillset appeared best suited for the job.

No evidence suggests that Defendant promoted Mahal for some other reason. When an employer "honestly believed" it promoted the best candidate, "its reasoning is not pretext, 'even if its decision was inaccurate, unfair, . . . foolish, trivial, or baseless.'" *Cunningham*, 125 F.4th at 790. Plaintiff cites no record evidence to undermine Defendant's honest belief that Mahal was best suited to assume the additional responsibilities assigned to her.

Plaintiff argues that Defendant violated its own protocol by failing to review Plaintiff's resume and fully consider his candidacy, but Plaintiff does not explain how

a violation of this protocol would undermine the truthfulness of Defendant's belief that Mahal's skillset was best suited for the promotion. Moreover, Plaintiff does not provide any citation to the record that shows what this protocol required or even that it existed at all. (*See* Dkt. 111.)[3] Without some evidence establishing the protocol's existence and its requirements, a mere allegation that Defendant violated its own protocol in promoting Mahal fails to raise a factual dispute as to whether Defendant's reason for the promotion was pretextual.

Plaintiff argues separately that, in overlooking Plaintiff's resume before selecting Mahal for the role, Velasquez cannot honestly say that he found Mahal to be the best candidate because he never assessed Plaintiff's candidacy. (Dkt. 111 at 6.) But whether Defendant was correct that Mahal was the best candidate for the job, which might require some comparison between candidates, is inapposite for establishing pretext. *See Upchurch v. Indiana*, 146 F.4th 579, 587 (7th Cir. 2025) (" 'If the [employer] honestly believed it made the correct employment decision—even if its decision was inaccurate, unfair, foolish, trivial, or baseless—[the plaintiff's] claims cannot succeed.' "). Plaintiff does not cite any evidence, and the Court is not otherwise aware of any record evidence, to suggest that Velasquez was not impressed by

---

[3] To be sure, a court is not obligated "in considering a motion for summary to assume the truth of a nonmovant's conclusory allegations on faith or to scour the record to unearth material factual disputes." *Skiba v. Illinois Central Railroad Co.*, 884 F.3d 708, 723 (7th Cir. 2018) (internal quotations omitted); *Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887, 898 (7th Cir. 2018) (" '[j]udges are not like pigs, hunting for truffles buried in' the record."). Even in the absence of any porcine duty, the Court has reviewed the record and been unable to identify any evidence concerning the alleged protocol.

Mahal's initiative and experience and instead covertly selected Mahal based on a discriminatory motive.

In addition, although Plaintiff testified during his deposition that Mahal was selected for the Director of Safety and Emergency management role, at least in part, because of "political connections" (Dkt. 100-2 at 122:11–24), no evidence substantiates Plaintiff's testimony such that a jury might find that Defendant's reasoning was a lie. At any rate, suggesting that Mahal was promoted due to alleged political connections does not reveal a discriminatory motive on Defendant's part. No evidence, in turn, suggests that Defendant's reason for hiring Mahal over Plaintiff was a pretext for an act of discrimination. Having reviewed the evidence as a whole, the Court finds that summary judgment in favor of Defendant is warranted on Plaintiff's race-based Title VII and IHRA claims for failure to promote.

### 2.    *Age*

Summary judgment in favor of Defendant is likewise appropriate for Plaintiff's claims of age discrimination under the ADEA and the IHRA in connection with the decision to promote Mahal. Stating that Plaintiff was over 40 years old and Mahal was under 40 at the time of Mahal's appointment, Plaintiff echoes his argument that Defendant's divergence from its own protocol in its hiring process constitutes evidence of pretext. As discussed above, however, Plaintiff does not provide any evidence from the record to show that Defendant violated any protocol. As Plaintiff "relies on his arguments and evidence presented" in connection with his "race discrimination claims" to support his claims of age discrimination (Dkt. 111 at 7),

summary judgment on the two age discrimination counts remaining in this case are awarded to Defendant.

## B.    Retaliation under Title VII

Plaintiff further claims that Defendant retaliated against him in response to his complaints about racial discrimination by terminating his employment in violation of Title VII. To survive summary judgment, Plaintiff must produce enough evidence for a reasonable jury to conclude that: (1) he engaged in a statutorily protected activity; (2) the employer took a materially adverse action against him; and (3) there was a but-for causal connection between the two. *Barona v. Vill. of Niles*, 720 F. Supp. 3d 601, 625 (N.D. Ill. 2024) (citing *Gnutek v. Ill. Gaming Bd.*, 80 F.4th 820, 824 (7th Cir. 2023)).

Title VII protects against employers "punishing employees for complaining about discrimination or other practices that violate Title VII." *Baraona*, 720 F. Supp. 3d at 625. Because Plaintiff lodged complaints of racial discrimination with the IDHR and the EEOC, Plaintiff engaged in a statutorily protected activity.[4] *See Northington v. H&M Intern.*, 712 F.3d 1062, 1065 (7th Cir. 2013) (an employee engages in a protected activity by "filing a charge . . . or participating in any manner in [a] . . . proceeding or hearing under Title VII[.]")

---

[4] Plaintiff also appears to cast his own investigation into Mahal's work attendance practices as statutorily protected activity, arguing that Defendant decided to terminate him "all while ignoring his valid complaints of violations by Mahal." (Dkt. 111 at 9.) Rather than address the issues regarding Mahal he uncovered, Plaintiff seems to suggest, Defendant chose to fire him. But Title VII protects against certain categories of discrimination, none of which encompass Plaintiff's investigatory conduct. *See* 42 U.S.C. § 2000e-2(a)(1). Whether Plaintiff's investigation into Mahal caused his termination is therefore irrelevant as to whether Defendant is liable under Title VII.

As to the second element (adverse action), the termination of employment is considered a materially adverse employment action for purposes of discrimination and retaliation claims.[5] *See Duncan v. Thorek Mem'l Hosp.*, 784 F. Supp. 2d 910, 919 (N.D. Ill. 2011). Accordingly, there is enough evidence on the record to satisfy the first two requirements of a retaliation claim.

As to the third element, however, Defendant seeks to break the causal connection between Plaintiff's complaint and his termination by arguing that the decisionmakers within the CDA who terminated Plaintiff had no knowledge of his statutorily protected complaints. (Dkt. 101 at 22.) To demonstrate that "a defendant was motivated to retaliate based on the plaintiff's protected activity, the plaintiff must first produce evidence that the defendant had actual knowledge of the protected activity." *Eaton v. J.H. Findorff & Son, Inc.*, 1 F.4th 508, 512 (7th Cir. 2021) (citations omitted).

---

[5] Plaintiff appears to have abandoned allegations made in his operative complaint regarding adverse employment actions other than termination, as he argues that there is a "clear causal connection between Plaintiff's complaints and his *retaliatory termination*[.]"(Dkt. 111 at 8) (emphasis added). Despite alleging that he was "harassed" through email, "marginalized" by his co-workers, that an approval for a vacation request was "delayed" (and then approved), that he was made to move offices, that he had to share a CDA vehicle (for use on CDA premises) rather than have his own assigned vehicle, and that Mahal filed a police report against him (Dkt. 51), Plaintiff makes no mention of any other alleged adverse employment action in his brief beyond a vague reference to Defendant's "retaliatory actions" (which include his termination). Even if Defendant were to substantiate these allegations through evidence on the record, he does not show how these additional actions would have "resulted in a 'quantitative or qualitative change in the terms or conditions of [his] employment.' " *Lauth v. Covance, Inc.*, 863 F.3d 708, 717 (7th Cir. 2017) (quoting *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003)). Accordingly, Plaintiff has not presented sufficient evidence that these other, nontermination alleged actions constitute adverse employment actions for purposes of summary judgment.

Both sides agree that Velasquez and Rhee were involved in the decision to terminate Plaintiff, but Plaintiff appears to argue that Mahal was a decisionmaker in Plaintiff's termination as well. Although Plaintiff complained to Mahal about Defendant's failure to promote him (Dkt. 114-4 at 44:4–45:15), Plaintiff presents no evidence that Mahal was responsible for terminating Plaintiff. Rather, Rhee testified, with no evidence contradicting her testimony, that she made the decision to terminate Plaintiff based on Velasquez's recommendation. (Dkt. 100-12 at 25:5–27:14; 31:14–21.) Causation thus turns on Velasquez's and Rhee's knowledge of the protected activity, rather than Mahal's.[6]

There are factual disputes in the record as to when and whether Velasquez and Rhee knew of Plaintiff's formal complaints. Mahal testified that she attended meetings with Defendant's Human Resources department and that she discussed with Velasquez Plaintiff's complaints of discrimination regarding Mahal's promotion. (Dkt. 114-4 at 44:4–45:15.) Because the record suggests that Velasquez discussed Plaintiff's complaints of discrimination with Mahal, there is a question of fact as to whether Velasquez learned of Plaintiff's statutorily protected activity through those

---

[6] When a plaintiff focuses on a nondecisionmaker, the Seventh Circuit has recognized a so-called "cat's paw" theory of liability where a biased employee lacks decision-making power to fire a co-worker but "uses [a] formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action[.]" *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014) (internal quotations omitted). Under this theory, the plaintiff must offer evidence that a "non-decision-making employee with discriminatory animus provided factual information or input that may have affected the adverse employment action." *Shreffler v. City of Kankakee, Illinois*, 2024 WL 1826976, at *6 (7th Cir. Apr. 26, 2024) (quoting *Miller v. Polaris Lab'ys, LLC*, 797 F.3d 486, 490 (7th Cir. 2015)). Plaintiff presents no evidence that Mahal acted with discriminatory animus. Plaintiff's retaliation claim thus cannot survive under the cat's paw theory of liability.

19

discussions. In addition, Rhee testified that she was "aware generally" of "some procedure" initiated by Plaintiff related to an "EEOC charge" for racial discrimination. (Dkt. 114-9 at 18:8–19:13.) Because it is not clear from the record whether Rhee gained this awareness before Plaintiff's termination, her general knowledge of Plaintiff's EEOC complaint raises a factual dispute as to whether she was aware of Plaintiff's protected activity before his termination. Velasquez's and Rhee's knowledge of Plaintiff's protected activity thus remains an open question of fact that must be construed in Plaintiff's favor.

By the same token, the interval between Plaintiff's filing of a discrimination complaint and his termination was not so long as to break conclusively the causal link to Plaintiff's termination. Defendant highlights that Plaintiff's termination in November 2019 occurred several months after Plaintiff first filed a complaint of discrimination in May 2019. *See Alamo v. Bliss*, 864 F.3d 541, 556 (7th Cir. 2017) (an inference of retaliation "can be weakened by a lengthy time period between the protected activity and the alleged retaliation"). A gap of several months between Plaintiff's protected activity and Defendant's adverse action can be too attenuated to raise an inference of retaliatory intent. *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 711 (7th Cir. 2002) (a three-month interval did not raise inference of retaliatory intent). But the gap here is not so large to make a finding of retaliation implausible. *See Coleman v. Donahoe*, 667 F.3d 835, 861 (7th Cir. 2012) ("when there is corroborating evidence of retaliatory motive, . . . an interval of a few weeks or even months may provide probative evidence of the required causal nexus.") In other

words, the interval in this case might present an evidentiary challenge for Plaintiff to address at trial, but it does not foreclose the possibility that a reasonable jury could find in Plaintiff's favor on the element of causality.

Even drawing all reasonable inferences in Plaintiff's favor, however, the Court finds that the record is insufficient for a reasonable jury to find that Plaintiff's complaints of discrimination caused his termination. To establish but-for causation, Plaintiff "must show that 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Chatman v. Board of Education of City of Chicago*, 5 F.4th 738, 749 (7th Cir. 2021) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). In the interim between Plaintiff's initial complaint regarding racial discrimination and his termination, Velasquez submitted a report to Rhee dated November 22, 2019 stating that, from November 2018 to November 2019, Plaintiff had sent harassing and insubordinate emails to Mahal, that Plaintiff had used his employer's systems without authorization to pull data related to Mahal's work attendance, that Plaintiff had used "offensive and threatening language" in reference to Mahal, that he had begun tracking Mahal's whereabouts, and that Plaintiff had, over the "course of a year, demonstrated behavior of a threatening and harassing nature toward" Mahal that was "unbecoming of a city of Chicago employee[.]" (Dkt. 100-10.) That report, and the conduct it describes, offers a competing reason for Plaintiff's termination besides Plaintiff's complaint alleging racial discrimination.

Plaintiff provides no evidence to suggest that this behavior did not cause his termination. Despite referencing a plot concocted by Mahal, Velasquez, and other employees to terminate him (Dkt. 111 at 9), Plaintiff presents no evidence in his briefing, other than his own speculation, to suggest that the behavior described in Velasquez's report never occurred or that the report was a mere cover to target Plaintiff. *See Lauth*, 863 F.3d at 717 (plaintiff's "own speculation" was insufficient to show at summary judgment that his former employer's "litany of complaints" and "documented history" of inappropriate communication was a cover for a retaliatory motive). Without any evidence to refute that Defendant fired Plaintiff because of his inappropriate conduct and unauthorized monitoring of Mahal's whereabouts and access to Defendant's data systems, Plaintiff cannot establish but-for causation between the filing of his discrimination complaints and his termination. Accordingly, summary judgment must be awarded to Defendant on Plaintiff's Title VII claim for retaliation.

## C. Retaliation under the Illinois Whistleblower Act

Section 15(b) of the IWA states that "an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). Illinois law approaches the element of causation under the IWA in the same manner as it is analyzed in retaliatory discharge cases. *Brummel v. Grossman*, 2018 IL App (1st) 170516 at ¶¶ 48, 49 (2018). To survive summary judgment, Plaintiff must establish

a causal relationship between his protected disclosure under the IWA and the adverse action. *Id.* (citing *Michael v. Precision Alliance Group, LLC*, 2014 IL 117376 at ¶ 31).

Plaintiff alleges in his Third Amended Complaint that the report he filed with the OIG described a violation of an Illinois statute prohibiting "a public officer or employee" from "[k]nowingly perform[ing] an act which he knows is forbidden by law to perform" or "[w]ith intent to obtain a personal advantage for himself or another, [performing] an act in excess of his lawful authority[.]" (Dkt. 51 ¶ 109); 720 ILCS 5/33-3. Because Plaintiff's report filed with the OIG includes materials related to Mahal's work attendance, allegedly showing the "stolen" time, the report could be construed to encompass an act forbidden by law that implies Mahal's knowledge.

But even if Plaintiff's OIG report constituted a disclosure protected by the IWA, Plaintiff presents no evidence to show that the disclosure to OIG caused Plaintiff's termination. In his letter to Rhee recommending Plaintiff's termination, and as noted above, Velasquez explained that, in addition to insubordinate and harassing behavior, Plaintiff conducted an unauthorized investigation into Mahal's "time and attendance records and auditing said time and attendance records without justification[.]" (Dkt. 100-10.) Velasquez's letter thus tied the process by which Plaintiff obtained the information within the disclosure to the termination recommendation, not to the act of disclosure itself. Moreover, the letter characterizes Plaintiff's unauthorized investigation as an instance within a broader pattern of unprofessional and insubordinate conduct. Plaintiff presents no evidence to show that he was terminated for disclosing a coworker's potentially unlawful actions rather

than a pattern of his own inappropriate behavior. Because Plaintiff fails to establish a causal link between his termination and his report regarding Mahal, summary judgment on Plaintiff's IWA claim must be granted in Defendant's favor.

## IV. CONCLUSION

Defendant's motion for summary judgment is granted as to all remaining counts in Plaintiff's Third Amended Complaint.

SO ORDERED in No. 20-cv-00076.

Date: September 29, 2025

_____
JOHN F. KNESS
United States District Judge